STATE EX REL. P. DAVIS OAKEY *vs.* GEORGE W. FOWLER.

First Judicial District, Hartford, March Term, 1895. ANDREWS, C. J.,
    TORRANCE, FENN, BALDWIN and HAMERSLEY, JS.

Section 49 of the General Statutes, which provides that no selectman shall
    hold the office of collector of town taxes during the same official year,
    does not create a disability upon the part of a selectman to be elected
    or appointed a collector; but merely prohibits an actual holding of the
    two offices at the same time.

The statute (Tit. 64, Chap. 2, § 94, Rev. of 1866), which provides that when-
    ever a vacancy shall exist in either of the offices of collector of taxes
    for the city of Hartford or collector of taxes for the town of Hartford,
    by death, removal, resignation, or otherwise, the remaining collector
    shall discharge the duties of said vacant office, contemplates these
    offices as filled by different persons, and intends that on the death,
    removal or resignation of one, the duties of his office shall be discharged
    by the other.

Therefore where *B*, who held the offices of collector of taxes for both the
    town and city of Hartford, died before the expiration of either term,
    and *F* was afterwards during said terms elected collector of town taxes,
    it was *held* that *F* was not "remaining collector" within the meaning
    of the statute, and was not empowered to collect taxes for the city.

The same statute further provides that "in case a vacancy shall exist, as
    aforesaid, in both of said offices, the same shall be filled for the unex-
    pired portion of said term, by a major vote of the selectmen of said
    town, and the alderman of said city at a meeting specially called and
    warned by the mayor of the city for that purpose." *Held* that two
    meetings were intended; one of the selectmen at which the vacancy in
    the town office is to be filled, and another of the aldermen specially
    called and warned by the mayor for that purpose, at which the vacancy
    in the city office is to be supplied.   (Two judges dissenting.)

When a member of an appointing body is appointed to an office by his own
    vote, if his own vote is necessary to give him a majority, such appoint-
    ment is void.

*Quo warranto* is a means to oust an illegal incumbent from an office, not
    to induct a legal one into it.

[Argued March 6th—decided June 22d, 1895.]

QUO WARRANTO to determine the title of the defendant
to the office of collector of city taxes of the city of Hartford,
brought to the Superior Court for Hartford County, and
tried to the court, *Hall, J.;* facts found and case reserved

for the advice of this court. *Judgment of ouster against the defendant advised.*

The case is sufficiently stated in the opinion.

*William F. Henney* and *William J. McConville,* for the relator.

*Charles E. Perkins* and *John H. Brocklesby,* for the respondent.

ANDREWS, C. J. This is an information in the nature of a *quo warranto,* made to the Superior Court in Hartford County by the State's Attorney in that county, at the relation of P. Davis Oakey, a resident and freeman of the town and city of Hartford. It alleges that the relator is the lawfully elected and qualified collector of taxes in the city of Hartford, and charges that notwithstanding his said election and qualification, since the 7th day of December, 1894, George W. Fowler of said town and city, and continuously hitherto, without legal warrant, claim, or right, has used and exercised, and still does use and exercise, the office of collector of city taxes for the term then being, and claims to be collector of city taxes and to have and to use and enjoy all the liberties, rights, privileges and franchises to said office pertaining; concerning which said office, liberties, rights, privileges and franchises, the said Fowler for all the time aforesaid has usurped, and does still usurp, at said Hartford, to the damage and prejudice of the said city and the said relator, and against the peace of the State.

Upon this information the court ordered that a rule be entered requiring the said George W. Fowler to show cause before said court, if any he have, why he usurps and by what warrant he claims to have, use and enjoy, the said office, rights, privileges and franchises of the office of collector of city taxes of the city of Hartford. At the time when the said rule was made returnable, the said Fowler appeared in court and showed cause by an answer to said information, to which answer the attorney for the State made replication.

The court heard the parties, made a finding of facts, and reserved the questions thereon arising for the advice of this court.    The finding is as follows :—

" 1.  On the first Monday of April, 1892, Frederick S. Brown of the city of Hartford was duly elected a collector of city taxes for the city of Hartford for the term of two years, and until his successor was chosen and qualified, and entered upon the performance of the duties of his said office, and continued in the exercise of all the rights and in the performance of all the duties of said office until his death.

" 2.  On the first Monday of April, 1894, said Frederick S. Brown was re-elected a collector of city taxes for the city of Hartford for the term of two years, beginning on the 7th day of May, 1894, and until his successor was chosen and qualified.

" 3.  On the 6th day of May, 1894, being the last day of his term of office heretofore referred to in paragraph 1, the said Brown died, and the office of collector of city taxes for the city of Hartford then became vacant.   At the time of his death the said Brown, in addition to being collector of city taxes for the city of Hartford, was, by virtue of an appointment by the board of selectmen on the first Monday in January, 1892, and his qualification under such appointment, collector of town taxes for the town of Hartford, for the term expiring on the 6th day of May, 1894; and by his death on said 6th day of May, 1894, the office of collector of town taxes also became vacant.   On the first Monday in January, 1894, said Brown was also re-appointed by the board of selectmen of said town, collector of town taxes for said town of Hartford, for the term of two years beginning on May 7th, 1894, and until his successor was chosen and qualified.

" 4.  On the 11th day of May, 1894, the board of selectmen of said town of Hartford, consisting of five members, including in the membership George W. Fowler, the defendant, by ballot chose said Fowler to fill the vacancy in the office of collector of town taxes for the said town of Hartford, for the unexpired term of said Brown, deceased.

State ex rel. Oakey *v.* Fowler.

Thereafter, on the 21st day of May, 1894, said Fowler resigned said office of selectman and accepted said office of collector of town taxes, and on said last-named day qualified for the office of collector of town taxes by filing a bond with said board of selectmen for the faithful performance of his duties as such collector, and entered upon the duties of his office.

" 5. Until November 26th, 1894, there was no election by the board of aldermen to fill said vacancy in the office of collector of city taxes for said city of Hartford, although sundry meetings had been held for that purpose, beginning May 14th. On said November 26th, 1894, at a meeting specially called and warned by the mayor of the city for that purpose, said Oakey received a majority of two of all the votes cast, and was declared by the presiding officer, the mayor, to be elected to the office of collector of city taxes for the city of Hartford, to fill the vacancy for the unexpired portion of the term of said Brown, deceased, and beginning May 7th, 1894.

" 6. The relator, P. Davis Oakey, on the 7th day of December, 1894, qualified for the office of collector of city taxes, as provided by law, and a warrant was issued to him by the mayor of said city on said last-named day, in due and legal form, for the collection of city taxes, and on the said 7th day of December, 1894, the relator made demand upon the said George W. Fowler for the surrender to the relator of all matters and things pertaining to said office, and said Fowler refused to deliver and surrender possession of the same to the relator, and still continues in the possession of said office, and in the exercise of its functions.

" 7. No other election or appointment has been taken to fill the vacancy caused by the death of said Brown in the office of the collector of city taxes, except as herein set forth.

" 8. The said Fowler, who was not collector of town taxes and in that office at the time of the death of said Brown, having been appointed collector of town taxes by the board of selectmen on the 11th day of May, 1894, and qualified on the 21st day of May, 1894, as above set forth, and no election

having taken place by the board of aldermen at that date to fill the vacancy in the office of collector of city taxes, claimed that by operation of law he then and thereupon became and was entitled to the office of collector of city taxes, and to the exercise of its rights, franchises, and the performance of its duties, and on the 21st day of June, 1894, tendered a bond to the mayor of said city, which the mayor took into consideration, and refused to approve. * * * The mayor also refused to issue, and never has issued, to said Fowler any warrant for the collection of city taxes. Thereupon said Fowler left said bond at the office of the city treasurer of said city on the 5th day of July, 1894. After said 5th day of July, 1894, and up to the present time said Fowler has collected the city taxes, and has been paid by the said city for the same to the first day of October, 1894, as provided for the collection of city taxes, and from said last named date continuously up to the present time the said Fowler has used, and is still using, the rights and franchises of said office.

" 9. On the 26th day of November, 1894, and at the time of his said election by the board of aldermen as collector of city taxes as aforesaid, said Oakey was, and ever since has been, a member of said board of aldermen.

" 10. Upon the foregoing facts said P. Davis Oakey, the relator, claims that he is the legally elected and qualified collector of city taxes for the city of Hartford, for the term beginning May 7th, 1894, and that said Fowler, ever since the 5th day of July, 1894, has usurped, and still usurps, the duties, rights, and franchises of said office."

If it appeared that Mr. Fowler was elected collector of town taxes by his own vote as one of the selectmen,—that his own vote was necessary to give him a majority of the board of selectmen—we should feel obliged to hold his election to be void. *The People ex rel. Davis* v. *Thomas*, 33 Barb., 287 ; *State* v. *Hoyt*, 2 Oregon, 246 ; *Kinyon* v. *Duchene*, 21 Mich., 498 ; Throop on Public Officers, §§ 121, 611 ; 19 Amer. & Eng. Ency. of Law, 431 ; *The Queen* v. *Owens*, 2 El. & El.,

86; *The Queen* v. *White*, L. R., 2 Q. B., 557. But it does not so appear, and this court cannot presume it.

Section 49 of the General Statutes prescribes that "no selectman shall hold the office of town clerk, town treasurer, or collector of town taxes of the same town during the same official year." The prohibition in this statute seems directed against the holding by a selectman, at the same time that he is a selectman, either of the other named offices. It forbids the holding of incompatible offices at the same time, rather than creates a disability for a certain period. So far as the terms of this statute extend, if one who had been elected a selectman should resign that office, he might afterwards enter upon the duties of either of the other offices, although the year for which he had been elected selectman had not ended. When the disability concerns the holding of the office merely, it is not a disability to be elected; it is sufficient if the disability be removed before the holding begins. *State ex rel. Schuet* v. *Murray*, 28 Wis., 96; *State* v. *Trumpf*, 50 id., 103; *Privett* v. *Bickford*, 26 Kan., 52; Cooley's Const. Lim. (6th Ed.), 780, note. And although there are some cases partly the other way—*Searcy* v. *Grow*, 15 Cal., 117; *State ex rel. Nourse* v. *Clarke*, 3 Nev., 566—this is the rule applicable to the statute just cited. It would seem, then, that Mr. Fowler has since the 21st day of May, 1894, been the lawful collector of town taxes in the town of Hartford.

In 1865 a public Act was passed, (Public Acts, 1865, Chap. 37) which has been kept in force ever since by express reference—§ 4021 of the General Statutes, 1888—concerning the collection of taxes in the town and city of Hartford. The first clause of the sixth section of that Act provides that "whenever a vacancy shall exist, by death, removal, resignation or otherwise, in the office of either of said collectors, the remaining collector shall be fully em-powered to, and shall discharge all the duties of said vacant office, for the unexpired portion of the term." The defendant is not empowered to collect the taxes of the city of Hartford by reason of his being chosen to be the collector of the taxes of the town of Hartford, unless he comes within the

words above quoted of the Act of 1865. That Act, in the part of it recited, is speaking of two offices—one the office of collector of town taxes for the town of Hartford, and the other the office of the collector of city taxes for the city of Hartford—and contemplates these offices as filled by different persons; and then if a vacancy happened in one of them there would be a remaining collector to whom the words of the statute would fitly apply. To remain means to continue, to stay, to be left, to be left behind after another or others have gone. Webster's Dict.; Century Dict.; Soule's Synonyms; Roget's Thesaurus. This is the ordinary use of the word, and within this meaning Mr. Fowler does not come.

Mr. Brown died on the 6th day of May, 1894. Mr. Fowler was not then in the office of collector either for the town or city. He was not qualified to collect the taxes for the town until the 21st day of May, 1894. He was not at the death of Mr. Brown the "remaining" collector. And by no ordinary use of language can he be said to have been at any time since, nor is he now, a remaining collector. Courts must always read the words of a statute in their ordinary meaning, unless the context shows that the legislature used them in a different meaning. We are led therefore to the conclusion that the defendant is not now, and that he has never been, empowered to collect the taxes of the city of Hartford.

This case might stop here. *Quo warranto* lies to oust an illegal incumbent from an office, not to induct a legal one into it. *Duane* v. *McDonald*, 41 Conn., 517; *Harrison* v. *Simonds*, 44 id., 318; *Hinckley* v. *Breen*, 55 id., 119; *State* v. *Lane*, 16 R. I., 620; *Strong, Petitioner*, 20 Pick., 484; High on Ex. Remedies, §§ 77, 748; Spelling on Ex. Remedies, § 1786. See also *Morris* v. *Bulkeley*, 61 Conn., 287; *Phelan* v. *Walsh*, 62 id., 260; 19 Am. & Eng. Ency. of Law, 683, 684. The title of the relator to the office of collector of city taxes, is not necessarily involved in the case. *State* v. *Carroll*, 17 R. I., 591. But as the information alleges also that the relator is the lawful collector of taxes in the city of Hartford, and the finding in its fifth and sixth paragraphs

sets forth the facts upon which his title to that office depends, and as it is one of the questions reserved, we have deemed it proper to consider it.

It is objected that there was no vacancy in the office of collector of city taxes at the time the relator was elected. It has already been shown that there was a vacancy in that office, and that this objection cannot prevail. And it is further objected that the aldermen acting alone had no power to fill a vacancy in that office, even if one had existed. We have before referred to the Act of 1865, and have quoted a part of its sixth section. The remaining part of the same section is as follows: "And in case a vacancy shall exist as aforesaid in both of said offices, the same shall be filled for the unexpired portion of said term, by a major vote of the selectmen of said town, and the aldermen of said city at a meeting specially called and warned by the mayor of the city for that purpose."

This part of the statute is speaking also of two offices, and of a vacancy in both so happening that there is no "remaining" collector in either; that is, two vacancies existing at the same time—and undertakes to designate the method by which these two vacancies are to be filled. The language is not entirely clear, and so the method of filling these two vacancies is somewhat uncertain. Are there to be two meetings, one of the selectmen at which the vacancy in the town office is to be filled, and another of the aldermen specially called and warned by the mayor for that purpose at which the vacancy in the city office is to be supplied? Or, is there to be one joint meeting of the selectmen and the aldermen, at which two collectors are to be chosen, one for the town and the other for the city? If a joint meeting, it must needs choose two collectors; there is no authority anywhere for one choice of one officer to be the joint collector of the two municipalities. There are two offices and there must be two elections, although the same man may be elected to both places. Such a joint meeting would be an anomaly. There is no rule existing, nor is one suggested in the statute, for its organization when it should be met, and no procedure

for it to follow. Would its members act in their official character, that is, as selectmen and as aldermen, or simply as individuals? The statute does not indicate. There is no place provided where its doings are to be recorded, nor is it provided how it could certify its choice to any one whom it might elect.

If such a meeting should choose a collector of town taxes, or of city taxes, there is no way provided for that man to receive any credentials of office, or a warrant by which he could enforce payment from an unwilling tax debtor. Other considerations occur. There are two municipalities entirely distinct from each other in all official character. It is possible that jealousies or rivalries might exist between them or a clashing of interests. There are only five selectmen while there are sixteen aldermen. A joint meeting of these boards, to be governed by a major vote, would enable a city board to elect a town officer, and so put the town into practical subordination to the city. It seems highly improbable that such a condition could be intended.

If, on the other hand, two meetings are to be held in the case of two vacancies, these various inconveniences disappear. Each board would act for its own municipality and fill the vacancy in the office of that one. The selectmen would choose a town collector, and the aldermen a city collector. Existing statutes and rules would be sufficient for the guidance of each. Each could certify to its own doings, and cause them to be properly recorded. In each case the official bond could be required and its sufficiency passed upon. Each board could furnish to its appointee credentials of office, and a warrant by which he could perform his official duties. The argument from convenience seems to us decisive and leads us to think that two meetings are intended; and that the meeting of the aldermen at which the relator was elected was such a meeting as this statute provides for. The relator would therefore appear to be the lawful collector of taxes for the city of Hartford.

The Superior Court is advised to render judgment of ouster against the defendant.

In this opinion TORRANCE and FENN, Js., concurred; BALDWIN and HAMERSLEY, Js., dissented.

BALDWIN, J. (dissenting).   On May 6th, 1894, Frederick S. Brown died, while holding the two offices of collector of taxes for the town of Hartford and collector of taxes for the city of Hartford.    His term of office, as respects each of these positions, would have expired at the close of that day, and he had been re-appointed to each for the next term of two years, beginning on May 7th.

It was provided by law (Rev. of 1866, p. 729, § 94 ; Rev. of 1888, § 3902) that whenever a vacancy should exist in either of these offices, the remaining collector should discharge all the duties of the vacant office for the unexpired portion of the term ; and that in case a vacancy should exist in both of said offices, " the same shall be filled for the unexpired portion of said term, by a major vote of the selectmen of said town, and the aldermen of said city, at a meeting specially called and warned by the mayor of the city for that purpose."

Until May 11th, 1894, a vacancy existed in both of said offices, and on that day the selectmen undertook to fill it, as respects that of collector of town taxes.   In my opinion, if General Statutes, § 63, authorizes the appointment of such a collector by the town or the selectmen, in case of a vacancy in both the offices of collector of town taxes and collector of city taxes in Hartford, it is only when there has been a failure to pursue or an unreasonable delay in pursuing the other mode of selection, specially provided for by § 3902. That mode, I think, was the action of a majority of those present at a joint meeting of the selectmen of the town and the aldermen of the city, to be specially called and warned by the mayor of the city, for that purpose, agreeably to the requirements of § 94, Title 64, Chap. 2, of the Revision of 1866.

The provisions of that chapter appear to me to have been drawn in contemplation of the probability that both these offices would ordinarily be filled by the same person.   That

result might naturally be looked for in view of the necessarily close relations of the town and city to each other, the practical identity of interest, and the convenience of the taxpayers. By § 93, repeated in General Statutes, Rev. of 1888, § 38, the official term of each collector is made the same, thus prolonging that of the collector of the town of Hartford a year beyond that of the collector of any other town in the State; while by § 95 the first selectman of the town and the mayor of the city are required to provide one and the same office for the payment and collection of both town and city taxes, half of the expense of which is to be paid by each municipality.

The provision for a joint meeting of representatives of each municipality, to be controlled by a major vote of those participating in it, was well adapted to secure prompt and decisive action, in an event which rendered a speedy election of the highest importance. To construe § 94 as contemplating two meetings, one of the board of selectmen called by their own authority to choose a town collector, and another of the board of aldermen called by the mayor to choose a city collector, seems to me not only to do violence to the natural meaning of the language employed, but to deprive the statute, so far as concerns town collectors, of any substantial effect. Without it, the selectmen could have acted alone under General Statutes, § 63; and no legislation was needed to declare that they could elect by a major vote.

As to the objection that no provision is made for organizing the joint meeting, or for recording or certifying to its doings, it would lie equally to holding the joint meeting of the General Assembly for the choice of a Governor, required by Art. IV., § 2, of our Constitution.

General Statutes, § 63, provides that if any town office in any town shall be vacant, the vacancy may be filled by the town in town meeting; and that until such action is had, it may be filled by the selectmen. The defendant was chosen town collector by the selectmen on May 11th, only five days after the decease of Mr. Brown. The relator founds his claim to the office of city collector upon a vote

of the board of aldermen, passed on November 26th. The city charter gives the common council power to prescribe the manner of filling vacancies occurring in any city office; but if under that authority any ordinance could have been framed for supplying temporarily a vacancy in the office of city collector, in a case proper for the action of a joint meeting of the selectmen and aldermen, none having, in fact, been enacted, the aldermen were, in my view of the law, incompetent to act alone. The relator therefore appears to me to have no interest in maintaining this action, except such as belongs to him as both a freeman and an alderman of the city. That interest, however, I should deem sufficient. *Commonwealth* v. *Commissioners*, 1 S. & R., 382; *State ex rel. City of Waterbury* v. *Martin*, 46 Conn., 479, 482. The information also is filed by the State's Attorney, in his own proper person, as well as at the relation of Mr. Oakey, and both are parties to the reservation.

I therefore concur in the advice given to the Superior Court, and in holding that the death of Mr. Brown created a vacancy in both offices, to be filled by the selectmen and aldermen pursuant to § 94, Title 64, Chap. 2, of the Revision of 1866; but I dissent from the opinion of the court as to the right, under that section, of the selectmen to choose a town collector and of the aldermen to choose a city collector, in separate meetings; nor am I prepared to assent to the views of the majority of the court in respect to what would have been the effect on the vote of the selectmen for the defendant as town collector, if otherwise valid, of his being one of the board, or of his participation in that action.

HAMERSLEY, J. (dissenting). I concur in the opinion of JUDGE BALDWIN in so far as it relates to the appointment, as city collector, of the relator Oakey. I think no advice should be given upon the question of the right of the town collector *ex officio* to perform the duties of the city collector, and the legality of Fowler's appointment as town collector. The latter question may depend on facts about which the record is silent, and which it is evident were not considered

by the parties when they agreed upon the finding; and therefore a hearing should be had before final judgment on the question of Fowler's title is rendered. It is obvious that in the absence of any personal interest in the relator, there may be grave question whether the public interest would justify further prosecution of the information; and I think the State's Attorney and the Superior Court should not be embarrassed in their action on that question by any premature expression of opinion from this court. I dissent from the advice given by the court.